**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ALMONDNET, INC., and INTENT IQ, LLC, | |
| Plaintiffs, | Case No. |
| v. | **JURY TRIAL DEMANDED** |
| VIANT TECHNOLOGY INC., VIANT TECHNOLOGY LLC, and LOCKR, INC. | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT AGAINST**
**VIANT TECHNOLOGY, INC., VIANT TECHNOLOGY LLC, and LOCKR, INC.**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs AlmondNet, Inc. and Intent IQ, LLC (collectively, "AlmondNet" or "Plaintiffs") make the following allegations against Defendants Viant Technology, Inc., Viant Technology LLC, and Lockr, Inc. (collectively[1], "Defendants"):

**INTRODUCTION AND PARTIES**

1.     This complaint arises from Defendants' unlawful infringement of the following United States patents owned by Plaintiffs, which generally relate to novel internet / network based advertising systems and methods: United States Patent Nos. 10,321,198, 8,595,069, 8,677,398, 11,949,962, 8,200,822, and 10,839,423 (collectively, the "Asserted Patents"). Plaintiffs own all right, title, and interest in the Asserted Patents to file this case.

---

[1] All allegations made herein against "Defendants" are to be understood as allegations against both defendants both individually and collectively, given their operation as a combined entity. *See, e.g.*, Ex. 1 (https://www.viantinc.com/company/news/press-releases/viant-technology-announces-acquisition-of-lockr/).

2.     AlmondNet, Inc. is a corporation organized and existing under the laws of the state of Delaware, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. Intent IQ, LLC is a Delaware limited liability company, having its place of business at 37-18 Northern Blvd. Suite 404, Long Island City, NY, 11101. AlmondNet, Inc. and Intent IQ, LLC, are collectively referred herein as the "Plaintiffs."

3.     Founded in 1998, AlmondNet has developed an extensive suite of industry-leading targeted advertising solutions and products, is focused on R&D and the licensing of its extensive portfolio of enabling technology and intellectual property covering numerous areas of the targeting landscape and ecosystem, including profile-based bidding, behavioral targeting, online and offline data monetization, addressable advertising, and multi-platform advertising.

4.     Intent IQ is a leading company in the field of cross-device-based ad targeting, retargeting, audience extension, and attribution. IIQ's "Dynamic Device Map" identifies a given user across multiple device types, including laptops, desktops, smartphones, tablets, and televisions, so as to assist advertisers in delivering targeted ads to consumers on all of their screens. Intent IQ can facilitate ad targeting based on profile data aggregated from activity on any of a user's screens, as well as measure the impact of previously delivered ads on the same or different screen.

5.     Defendant Viant Technology LLC is a limited liability company organized under the laws of the state of Delaware, with its principal place of business at 2722 Michelson Drive, Suite 100 Irvine, CA, 92612. Viant Technology LLC may be served via its Delaware registered agent Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE, 19904.

6.     Defendant Viant Technology, Inc. is a Delaware corporation with its principal place of business at 2722 Michelson Drive, Suite 100 Irvine, CA, 92612. Viant Technology, Inc. may

be served via its Delaware registered agent Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, DE, 19904.

7.      Lockr, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 1512 Palisade Avenue, Apt. 9J, Fort Lee, New Jersey 07024. Lockr, Inc. may be served via its Delaware registered agent Incorp Services, Inc. 131 Continental Drive Suite 301, Newark, Delaware 19713. On information and belief, Viant Technology, Inc. acquired Lockr, Inc. in 2025.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendants in this action because Defendants are incorporated under the laws of the state of Delaware, have committed acts within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products and services that infringe the Asserted Patents.

10.     Venue is proper in this District because Defendants are incorporated under the laws of the State of Delaware.

## FACTUAL ALLEGATIONS

11.     AlmondNet placed Defendants on notice of the Asserted Patents.

12.     On July 24, 2019, AlmondNet sent a notice letter to Viant Technology, Inc. identifying how Viant infringes numerous patents in AlmondNet's portfolio, including U.S. Patent Nos. 8,595,069 (including at least claims 1-5 and 8-31), 10,321,198 (including at least claims 1-5 and 8-33), and 8,677,398 (including at least claims 13-17 and 19-26), and explained how Viant could contact AlmondNet to discuss licensing AlmondNet's patent portfolio. With respect to U.S. Patents 8,595,069, 8,677,398, 10,321,198 (the "'069," "'398," and "'198" patents, respectively), the notice letter specifically explained that "[b]ased on our investigation to date, Viant's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Viant Demand-Side Platform, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 8,595,069 (including at least claims 1-5 and 8-31) . . . , 8,677,398 (including at least claims 13-17 and 19-26) . . . [and] U.S. Patent 10,321,198 (including at least claims 1-5 and 8-33). . . . If Viant wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 2 at 1-3.

13.     One of the exhibits attached to the notice letter describes DSP infringement of U.S. Patents 8,595,069 & 10,321,198. *See* Ex. 3 at 152-153 ("Exhibit D"). Exhibit D's discussion of the "**Infringement scenarios**" explained that "DSPs cause delivery of a targeted ad to an online device following an OTT ad presentation via a STB associated with the online device using a probabilistic device map"[2] and that "DSPs note user action on an online device and attribute it to a TV ad previously presented via a STB associated with the online device using a probabilistic device map." *Id.* The "**[b]rief explanation of infringement**" section from Exhibit D provided an overview of infringement for the '069 patent: "[t]he DSP computer system performs the patented

---

[2] As mentioned in the exhibit, "[t]he term 'OTT' stands for 'Over the Top or OTT' and refers to delivery of digital video to televisions via Internet-connected devices (or functionality within the television itself)."

method"; "The DSP computer receives a 'notification,' namely a 'tracking event' as a result of ad rendering via the STB. The 'tracking event' (notification) signifies presentation of a TV ad via STB, specifically an OTT video impression or a presentation progress measurement (reported using various techniques compatible with the VAST standard), when ads are streamed either to smart TVs or streaming devices (e.g., Roku, AppleTV, Amazon Fire, Google Chromecast). The notification includes an 'STB identifier,' such as Roku's 'RIDA' or AppleTV's 'advertisingIdentifier,' or an IP address"; "[t]he DSP computer performs either of two types of 'first action': (a) Causing a targeted ad to be delivered to the online device based on a particular type of tracking event . . . ; or (b) attributing user action on the online device to the presentation of the TV ad via the associated STB, which presentation is indicated by a particular type of tracking event . . ."; and "[t]he association of STB and online device is done without use of PII and based on common LAN, using probabilistic device maps, as shown in Yahoo claim charts related to U.S. Patent 8,677,398." *Id.* Exhibit D then explained that the difference between claim 1 of the '069 patent and claim 1 of the '198 patent "is that the 'common LAN' association is not required in part (c), but the 'no-PII' limitation remains. The nature of the infringement is parallel."[3] *Id.* No resolution was reached as a result of this communication.

14.    Viant Technology, Inc. subsequently acquired Lockr, Inc. in 2025.

15.    When acquiring Lockr, Viant Technology, Inc. explained "[a]ddressability is the future of advertising and Viant's acquisition of Lockr is expected to accelerate its arrival across the programmatic ecosystem." *See* Ex. 1 (https://www.viantinc.com/company/news/press-releases/viant-technology-announces-acquisition-of-lockr/). The Defendants explained "we plan to make Lockr's solutions open to the entire ecosystem including other alternative identifiers." *Id.*

---

[3] Exhibit D inadvertently refers to the '198 patent as "U.S. Patent 8,595,069" in this discussion.

As such, on information and belief, AlmondNet alleges each defendant jointly and/or individually infringes each of the asserted patents as explained below.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,595,069

16.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

17.     Plaintiffs own all rights, title, and interest in U.S. Patent No. 8,595,069, titled "systems and methods for dealing with online activity based on delivery of a television advertisement," issued on November 26, 2013 ("the '069 patent"). A true and correct copy of the '069 patent is attached as Exhibit 4.

18.     On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's computer systems that implement and provide Viant's advertising platform, including but not limited to components such as the Omnichannel Marketing Platform, CTV Advertising, Viant Identity Graph, Householding, Automatic Content Recognition, Viant DSP, and Lockr) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '069 patent.

19.     The infringement of the '069 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '069 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

20.     Defendants' infringement has been and is willful. Defendants knew of, or were willfully blind to, the '069 patent and that the Accused Instrumentalities infringed it long before

this suit was filed. For example, AlmondNet and Viant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio and Viant's infringement of it. In these discussions, AlmondNet notified Viant of its infringement of the '069 patent at least as early as July 24, 2019. The notice letter explained that "[b]ased on our investigation to date, Viant's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Viant Demand-Side Platform, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 8,595,069 (including at least claims 1-5 and 8-31). . . . If Viant wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 2 at 1-3. One of the exhibits attached to the notice letter provided a discussion of the "**Infringement scenarios.**" *See* Ex. 3 at 152-153. Specifically, Exhibit D explained that "DSPs cause delivery of a targeted ad to an online device following an OTT ad presentation via a STB associated with the online device using a probabilistic device map"[4] and that "DSPs note user action on an online device and attribute it to a TV ad previously presented via a STB associated with the online device using a probabilistic device map." *Id.* The "**[b]rief explanation of infringement**" section of the discussion explained that "[t]he DSP computer system performs the patented method"; "The DSP computer receives a 'notification,' namely a 'tracking event' as a result of ad rendering via the STB. The 'tracking event' (notification) signifies presentation of a TV ad via STB, specifically an OTT video impression or a presentation progress measurement (reported using various techniques compatible with the VAST standard), when ads are streamed either to smart TVs or streaming devices (e.g., Roku, AppleTV, Amazon Fire, Google Chromecast). The notification includes an 'STB identifier,' such as Roku's 'RIDA' or AppleTV's

---

[4] As mentioned in the exhibit, "[t]he term 'OTT' stands for 'Over the Top or OTT' and refers to delivery of digital video to televisions via Internet-connected devices (or functionality within the television itself)."

'advertisingIdentifier,' or an IP address"; "[t]he DSP computer performs either of two types of 'first action': (a) Causing a targeted ad to be delivered to the online device based on a particular type of tracking event . . . ; or (b) attributing user action on the online device to the presentation of the TV ad via the associated STB, which presentation is indicated by a particular type of tracking event . . ."; and "[t]he association of STB and online device is done without use of PII and based on common LAN, using probabilistic device maps, as shown in Yahoo claim charts related to U.S. Patent 8,677,398." *Id.* Despite Defendants' knowledge of or willful blindness to the '069 patent as a result of the 2019 communications as well as the filing of this complaint, Defendants continued and still continue to infringe the '069 patent. In doing so, Defendants knew, or should have known, that their conduct amounted to infringement of the '069 patent. Accordingly, Defendants are liable for willful infringement.

21.    The Accused Instrumentalities perform all claim limitations of one or more method claims of the '069 patent. A claim chart comparing independent method claim 1 of the '069 patent to a representative Accused Instrumentalities is attached as Exhibit 5, which is hereby incorporated by reference in its entirety.

22.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and is liable for infringement of the '069 patent pursuant to 35 U.S.C. § 271.

23.    As a result of Defendants' infringement of the '069 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

24.     Plaintiffs are entitled to past damages for Defendants' infringement of the '069 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '069 patent.

25.     Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '069 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

<u>**COUNT II**</u>

<u>**INFRINGEMENT OF U.S. PATENT NO. 10,321,198**</u>

26.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

27.     Plaintiffs owns all rights, title, and interest in U.S. Patent No. 10,321,198, titled "systems and methods for dealing with online activity based on delivery of a television advertisement," issued on June 11, 2019 ("the '198 patent"). A true and correct copy of the '198 patent is attached as Exhibit 6.

28.     On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's computer systems that implement and provide Viant's advertising platform, including but not limited to components such as the Omnichannel Marketing Platform, CTV Advertising, Viant Identity Graph, Householding, Automatic Content Recognition, Viant DSP, and Lockr) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '198 patent.

29.     The infringement of the '198 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused

Instrumentalities to perform acts that result in infringement of the '198 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

30.    Defendants' infringement has been and is willful. Defendants knew of, or were willfully blind to, the '198 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, Plaintiffs and Viant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio and Viant's infringement of it. In these discussions, AlmondNet notified Viant of its infringement of the '198 patent at least as early as July 24, 2019. The notice letter explained that "[b]ased on our investigation to date, Viant's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Viant Demand-Side Platform, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 10,321,198 (including at least claims 1-5 and 8-33). . . . If Viant wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 2 at 1-3. One of the exhibits attached to the notice letter provided a discussion of the "**Infringement scenarios.**" *See* Ex. 3 at 152-153. Specifically, Exhibit D explained that "DSPs cause delivery of a targeted ad to an online device following an OTT ad presentation via a STB associated with the online device using a probabilistic device map"[5] and that "DSPs note user action on an online device and attribute it to a TV ad previously presented via a STB associated with the online device using a probabilistic device map." *Id.* The "**[b]rief explanation of infringement**" section of the discussion explained that "[t]he DSP computer system performs the patented method"; "The DSP computer receives a 'notification,' namely a

---

[5] As mentioned in the exhibit, "[t]he term 'OTT' stands for 'Over the Top or OTT' and refers to delivery of digital video to televisions via Internet-connected devices (or functionality within the television itself)."

'tracking event' as a result of ad rendering via the STB. The 'tracking event' (notification) signifies presentation of a TV ad via STB, specifically an OTT video impression or a presentation progress measurement (reported using various techniques compatible with the VAST standard), when ads are streamed either to smart TVs or streaming devices (e.g., Roku, AppleTV, Amazon Fire, Google Chromecast). The notification includes an 'STB identifier,' such as Roku's 'RIDA' or AppleTV's 'advertisingIdentifier,' or an IP address"; "[t]he DSP computer performs either of two types of 'first action': (a) Causing a targeted ad to be delivered to the online device based on a particular type of tracking event . . . ; or (b) attributing user action on the online device to the presentation of the TV ad via the associated STB, which presentation is indicated by a particular type of tracking event . . ."; and "[t]he association of STB and online device is done without use of PII and based on common LAN, using probabilistic device maps, as shown in Yahoo claim charts related to U.S. Patent 8,677,398." *Id.* Exhibit D then explained that the difference between claim 1 of the '069 patent and claim 1 of the '198 patent "is that the 'common LAN' association is not required in part (c), but the 'no-PII' limitation remains. The nature of the infringement is parallel."[6] *Id.* Despite Defendants' knowledge of or willful blindness to the '198 patent as a result of the 2019 communications as well as the filing of this complaint, Defendants continued and still continue to infringe the '198 patent. In doing so, Defendants knew, or should have known, that their conduct amounted to infringement of the '198 patent. Accordingly, Defendants are liable for willful infringement.

31.    The Accused Instrumentalities perform all claim limitations of one or more method claims of the '198 patent. A claim chart comparing independent method claim 1 of the '198 patent

---

[6] Exhibit D inadvertently refers to the '198 patent as "U.S. Patent 8,595,069" in this discussion.

to a representative Accused Instrumentalities is attached as Exhibit 7, which is hereby incorporated by reference in its entirety.

32.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and is liable for infringement of the '198 patent pursuant to 35 U.S.C. § 271.

33.     As a result of Defendants' infringement of the '198 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

34.     Plaintiffs are entitled to past damages for Defendants' infringement of the '198 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '198 patent.

35.     Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '198 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,677,398

36.     AlmondNet realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

37.     Plaintiffs owns all rights, title, and interest in U.S. Patent No. 8,677,398, titled "systems and methods for taking action with respect to one network-connected device based on

activity on another device connected to the same network," issued on March 18, 2014 ("the '398 patent"). A true and correct copy of the '398 patent is attached as Exhibit 8.

38.    On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's computer systems that implement and provide Viant's advertising platform, including but not limited to components such as the include Lockr AIM, Household ID, and Identity Graph) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '398 patent.

39.    The infringement of the '398 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '398 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

40.    Defendants' infringement has been and is willful. Defendants knew of, or were willfully blind to, the '398 patent and that the Accused Instrumentalities infringed it long before this suit was filed. For example, Plaintiffs and Viant communicated, e.g., in the 2019 time frame, regarding AlmondNet's patent portfolio and Viant's infringement of it. In these discussions, AlmondNet notified Viant of its infringement of the '398 patent at least as early as July 24, 2019. The notice letter explained that "[b]ased on our investigation to date, Viant's demand side platform ("DSP") service, which we understand is often marketed under the name or brand Viant Demand-Side Platform, infringes several patents owned by the AlmondNet Group, including at least the following: . . . U.S. Patent 8,677,398 (including at least claims 13-17 and 19-26). . . . If Viant wishes to discuss a license to the AlmondNet Group patents, please give myself or any of the following lawyers a call . . ." *See* Ex. 2 at 1-3. Despite Defendants' knowledge of or willful

blindness to the '398 patent as a result of the 2019 communications as well as the filing of this complaint, Defendants continued and still continue to infringe the '398 patent. In doing so, Defendants knew, or should have known, that their conduct amounted to infringement of the '398 patent. Accordingly, Defendants are liable for willful infringement.

41.    Defendants also knowingly and intentionally induces infringement of one or more method claims of the '398 patent in violation of 35 U.S.C. § 271(b) by sending an identifier, e.g., a Viant Household ID, that an SSP or publisher requesting a bid from an infringing DSP adds to its outgoing bid request. *See* Ex. 9 at 20-36. Before or during the SSP's or publisher's transmission of the bid request, Viant sends a Houshold ID for the particular visitor to Lockr. Lockr then passes the identifier (i.e., the Household ID) to the SSP or publisher to include in its bid request. *Id.* The DSP's bid response is based on first electronic profile data associated with the Household ID that Lockr sends to the SSP or publisher. *Id.* The identifiers for the particular visitor that Lockr sends to the SSP or publisher for inclusion in a bid request are generated based on connection, before the advertisement or conversion, of each of the first and second devices, independently of the other, to a common local area network, e.g., by Viant's comparison of IP addresses that the first and second devices used to connect to the Internet. *Id.* at 37-43. Defendants have had knowledge of, or were willfully blind to, the '398 patent and the infringing nature of the Accused Instrumentalities at least as early as July 24, 2019 when they received AlmondNet's communication identifying the '398 patent and explaining that Viant infringes numerous patents in AlmondNet's portfolio, including the '398 patent, as set forth above. Despite this knowledge of the '398 patent, Defendant continues to make, use, offer for sale, sell, and and/or import the Accused Instrumentalities, and to actively encourage and instruct customers and other companies to make, use, offer for sale, sell, and/or import the Accused Instrumentalities in ways that directly infringe the '398 patent. When

used as instructed, Defendants' customers and partners use components such as the Lockr AIM and Household ID to practice the method of claim 13 of the '398 patent and directly infringe the asserted method claims. *See* Ex. 9 at 20-43. Defendants specifically intend that their actions will result in infringement of the asserted method claims of the '398 patent or subjectively believe that their actions will result in infringement of the asserted method claims, but took deliberate actions to avoid learning of the facts.

42.    The Accused Instrumentalities perform all claim limitations of one or more method claims of the '398 patent. A claim chart comparing independent method claim 1 of the '398 patent to a representative Accused Instrumentalities is attached as Exhibit 9, which is hereby incorporated by reference in its entirety.

43.    By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and is liable for infringement of the '398 patent pursuant to 35 U.S.C. § 271.

44.    As a result of Defendants' infringement of the '398 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

45.    Plaintiffs are entitled to past damages for Defendants' infringement of the '398 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '398 patent.

46.    Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '398 patent,

and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 11,949,962

47.    Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

48.    Plaintiffs own all rights, title, and interest in U.S. Patent No. 11,949,962, titled "method and computer system using proxy IP addresses and PII in measuring ad effectiveness across devices," issued on April 2, 2024 ("the '962 patent"). A true and correct copy of the '962 patent is attached as Exhibit 10.

49.    On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's Demand Side Platform, including but not limited to components such as Viant Household ID, Lockr, OmniChannel Marketing Platform,  Automatic Content Recognition) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '962 patent.

50.    The infringement of the '962 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '962 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

51.    Defendants' infringement has been and is willful. Through at least the filing and service of this Complaint, Defendants have had knowledge of, or were willfully blind to, the '962 patent and that the Accused Instrumentalities infringed. Despite Defendants' knowledge of or

willful blindness to the '962 patent at least as a result of the filing and service of this Complaint, Defendants continued and still continue to infringe the '962 patent. In doing so, Defendants knew, or should have known, that their conduct amounted to infringement of the '962 patent. Accordingly, Defendants are liable for willful infringement.

52.     The Accused Instrumentalities perform all claim limitations of one or more method claims of the '962 patent. A claim chart comparing independent method claim 1 of the '962 patent to a representative Accused Instrumentalities is attached as Exhibit 11, which is hereby incorporated by reference in its entirety.

53.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and are liable for infringement of the '962 patent pursuant to 35 U.S.C. § 271.

54.     As a result of Defendants' infringement of the '962 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

55.     Plaintiffs are entitled to past damages for Defendants' infringement of the '962 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '962 patent.

56.     Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '962 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

**COUNT V**

## INFRINGEMENT OF U.S. PATENT NO. 8,200,822

57.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

58.     Plaintiffs own all rights, title, and interest in U.S. Patent No. 8,200,822, titled "media properties selection method and system based on expected profit from profile-based ad delivery," issued on June 12, 2012 ("the '822 patent"). A true and correct copy of the '822 patent is attached as Exhibit 12.

59.     On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's computer systems that implement and provide Viant's advertising platform, including but not limited to components such as the Omnichannel Marketing Platform, Mobile Advertising, CTV Advertising, Viant Identity Graph, Householding, Automatic Content Recognition, Viant's DSP and associated functionality, and Lockr) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '822 patent.

60.     The infringement of the '822 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '822 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

61.     Defendants' infringement has been and is willful. Through at least the filing and service of this Complaint, Defendants have had knowledge of, or were willfully blind to, the '822 patent and that the Accused Instrumentalities infringed. Despite Defendants' knowledge of or willful blindness to the '822 patent at least as a result of the filing and service of this Complaint, Defendants continued and still continue to infringe the '822 patent. In doing so, Defendants knew,

or should have known, that their conduct amounted to infringement of the '822 patent. Accordingly, Defendants are liable for willful infringement.

62.     The Accused Instrumentalities perform all claim limitations of one or more method claims of the '822 patent. A claim chart comparing independent method claim 1 of the '822 patent to a representative Accused Instrumentalities is attached as Exhibit 13, which is hereby incorporated by reference in its entirety.

63.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and is liable for infringement of the '822 patent pursuant to 35 U.S.C. § 271.

64.     As a result of Defendants' infringement of the '822 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

65.     Plaintiffs are entitled to past damages for Defendants' infringement of the '822 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '822 patent.

66.     Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '822 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

## COUNT VI

## INFRINGEMENT OF U.S. PATENT NO. 10,839,423

67.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

68.     Plaintiffs own all rights, title, and interest in U.S. Patent No. 10,839,423, titled "condition-based method of directing electronic advertisements for display in ad space within streaming video based on website visits," issued on November 17, 2020 ("the '423 patent"). A true and correct copy of the '423 patent is attached as Exhibit 14.

69.     On information and belief, Defendants make, use, offer for sale, sell, and/or import the Accused Instrumentalities (Viant's computer systems that implement and provide Viant's advertising platform, including but not limited to components such as the Omnichannel Marketing Platform, Mobile Advertising, CTV Advertising, Viant Identity Graph, Householding, Automatic Content Recognition, Viant's DSP and associated functionality, and Lockr) that directly infringe, literally and/or under the doctrine of equivalents, one or more method claims of the '423 patent.

70.     The infringement of the '423 patent is also attributable to Defendants. Defendants and/or users of the Accused Instrumentalities direct and control use of the Accused Instrumentalities to perform acts that result in infringement of the '423 patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

71.     Defendants' infringement has been and is willful. Through at least the filing and service of this Complaint, Defendants have had knowledge of, or were willfully blind to, the '423 patent and that the Accused Instrumentalities infringed. Despite Defendants' knowledge of or willful blindness to the '423 patent at least as a result of the filing and service of this Complaint, Defendants continued and still continue to infringe the '423 patent. In doing so, Defendants knew,

or should have known, that their conduct amounted to infringement of the '423 patent. Accordingly, Defendants are liable for willful infringement.

72.     The Accused Instrumentalities perform all claim limitations of one or more method claims of the '423 patent. A claim chart comparing independent method claim 1 of the '423 patent to a representative Accused Instrumentalities is attached as Exhibit 15, which is hereby incorporated by reference in its entirety.

73.     By making, using, offering for sale, selling and/or importing into the United States the Accused Instrumentalities, Defendants have injured Plaintiffs and is liable for infringement of the '423 patent pursuant to 35 U.S.C. § 271.

74.     As a result of Defendants' infringement of the '423 patent, Plaintiffs are entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

75.     Plaintiffs are entitled to past damages for Defendants' infringement of the '423 patent. 35 U.S.C. § 287 does not apply to this case because Plaintiffs have only asserted method claims of the '423 patent.

76.     Defendants' infringing activities have injured and will continue to injure Plaintiffs, unless and until this Court enters an injunction prohibiting further infringement of the '423 patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed, either literally

and/or under the doctrine of equivalents, each of the Asserted Patents;

b.     A judgment in favor of Plaintiffs finding pre-suit and post-suit willful infringement as to the '198, '069, and '398 patents and post-suit willful infringement as to the '962, '822, and '423 patents;

c.     A permanent injunction prohibiting Defendants from further acts of infringement of the Asserted Patents;

d.     A judgment and order requiring Defendants to pay Plaintiffs their damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants' infringement of the Asserted Patents;

e.     A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

f.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendant; and

g.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

Dated: May 7, 2025

Of Counsel:

Reza Mirzaie
Marc A. Fenster
Brian D. Ledahl
Adam S. Hoffman
James A. Milkey
Philip X. Wang
James Tsuei
Jonathan Ma
Joshua M. Scheufler
Daniel B. Kolko
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
ahoffman@raklaw.com
jmilkey@raklaw.com
pwang@raklaw.com
jtsuei@raklaw.com
jma@raklaw.com
jscheufler@raklaw.com
dkolko@raklaw.com

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*